**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Matthew M. Loker, Esq. (279939)
ml@kazlg.com
Nicholas R. Barthel, Esq. (319105)
nicholas@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South,  Ste. 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

*Attorneys for Plaintiff,*
Victor M. Sanchez, III

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**VICTOR M. SANCHEZ, III,**

Plaintiff,

v.

**U.S. BANK NATIONAL ASSOCIATION,**

Defendant.

**Case No.**: CV 18-500 JLS (KSx)

**PLAINTIFF VICTOR M. SANCHEZ, III'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT U.S. BANK NATIONAL ASSOCIATION**

**DATE:     JUNE 28, 2019**
**TIME:     10:30 A.M.**
**COURT:  10A**

**HON. JOSEPHINE L. STATON**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... iv

I.  INTRODUCTION ................................................................................... 1

II. LEGAL STANDARD ............................................................................. 2

      A. SUMMARY JUDGMENT ..................................................................... 2

      B. PARTIAL SUMMARY JUDGMENT ...................................................... 2

III. FACTUAL BACKGROUND .................................................................. 2

      A. THE OPENING OF THE US BANK ACCOUNT ................................... 3

      B. PLAINTIFF'S FIRST DISPUTE ........................................................... 3

      C. PLAINTIFF'S SEPTEMBER 7, 2017 DISPUTE TO TRANS UNION ............... 4

      D. PLAINTIFF'S SEPTEMBER 15, 2017 DISPUTE TO EQUIFAX ..................... 4

      E. FATHER'S SEPTEMBER 27, 2017 DISPUTE TO US BANK ........................ 5

      F. PLAINTIFF'S NOVEMBER 27, 2017 DIRECT DISPUTE TO US BANK ......... 5

      G. ACCOUNT CHARGE OFF ................................................................. 6

      H. PLAINTIFF'S FEBRUARY 15, 2018 DISPUTE TO EQUIFAX ...................... 6

      I. PLAINTIFF'S FEBRUARY 15, 2018 DISPUTE TO EXPERIAN ..................... 6

      J. PLAINTIFF'S FEBRUARY 15, 2018 DISPUTE TO TRANS UNION ............... 7

      K. PLAINTIFF'S MARCH 10, 2018 DISPUTE TO MONARCH ......................... 7

IV. ARGUMENT ......................................................................................... 8

      A. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AGAINST US BANK
         PURSUANT TO THE FCRA ............................................................... 8

1. US Bank Is A "Furnisher" As Defined By 15 U.S.C. § 1681s-2 ...................................................................... 9

2. US Bank Reported The Mark To The Credit Bureaus ............. 9

3. Plaintiff Disputed US Bank's Mark With The Three Major Credit Bureaus ................................................................. 9

4. US Bank Verified The Mark On Plaintiff's Consumer Report ....................................................................... 10

5. The Information As Reported On Plaintiff's Consumer Report Is Inaccurate ..................................................... 10

6. Bank's Investigation was Not Reasonable ......................... 12

   a. *US Bank's Investigation Disregarded Plaintiff's Dispute* ............................................................... 12

   b. *US Bank Merely Regurgitates Its Internal Documents* ....................................................... 14

   c. *US Bank's Dispute Analysts Did Not Properly Review Relevant Documents* ........................... 16

   d. *US Bank placed efficiency over accuracy by rewarding only speedy results* ....................... 18

   e. *US Bank had Untrained Support Staff Investigating and Submitting ACDVs* ......................... 19

B. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AGAINST US BANK PURSUANT TO THE CCCRAA .................................. 20

1. US Bank Is A "Person" As Defined by Cal. Civ. Code § 1785.3(j) ............................................................... 20

2. US Bank Reported Information Regarding Plaintiff To A "Consumer Credit Reporting Agency" As Defined By Cal. Civ. Code § 1788.2(k) .......................................... 21

3. US Bank Knew Or Should Have Known The Information It Reported Was Inaccurate In Violation Of Cal. Civ. Code § 1785.25(a) ............................................................................21

C. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AGAINST US BANK PURSUANT TO THE RFDCPA ..........................................................22

1. US Bank was attempting to collect a "consumer debt" .........22

2. US Bank is a "debt collector" .................................................23

3. Plaintiff is a "debtor" ............................................................23

4. US Bank violated the RFDCPA by violating FDCPA ..........23

a. US Bank Violated 15 U.S.C. §§ 1692e; 1692e(2)(A); and 1692e(8); 1692f; and, 1692f(1) .....................................24

V. CONCLUSION ..............................................................................25

# **TABLE OF AUTHORITIES**

*Abbot v. Experian Info. Sols.*,
    179 F. Supp. 3d 940 (N.D. Cal. 2016) ........................................................ 12

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986) ...................................................................................... 2

*Biggs v. Experian Info. Sols., Inc.*,
    209 F. Supp. 3d 1142 (N.D. Cal. 2016) ........................................................ 8

*Carvalho v. Equifax Info. Servs., LLC*,
    629 F.3d 876 (9th Cir. 2010) ...................................................................... 20

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ...................................................................................... 2

*Corns v. Residential Credit Sols., Inc.*,
    2016 U.S. Dist. LEXIS 27864 (D. Nev. Mar. 3, 2016) ............................... 10

*Cutler ex rel. Jay v. Sallie Mae, Inc.*,
    2014 U.S. Dist. LEXIS 181914 (C.D. Cal. 2014) ....................................... 23

*Ellis v. Pa. Higher Educ. Assistance Agency*,
    2008 U.S. Dist. LEXIS 129710 (C.D. Cal. Aug. 12, 2008) ......................... 10

*Fed. Trade Comm'n v. Gill*,
    265 F.3d 944 (9th Cir. 2001) ........................................................................ 1

*Felts v. Wells Fargo Bank, N.A.*,
    893 F.3d 1305 (11th Cir. 2018) .................................................................. 14

*Gallegos v. LVNV Funding LLC*,
    169 F. Supp. 3d 1235 (D. Utah 2016) ........................................................ 25

*Gorman v. Wolpoff & Abramson, LLP*,
    584 F.3d 1147 (9th Cir. 2009) ............................................................ *passim*

*Guimond v. Trans Union Credit Info. Co.*,
    45 F.3d 1329 (9th Cir. 1995) ........................................................................ 1

*Herrera v. First Nat'l Bank of Omaha*,
   2017 U.S. Dist. LEXIS 200103 (C.D. Cal. 2017)............................................2

*Hinkle v. Midland Credit Mgmt., Inc*.,
   827 F.3d 1295 (11th Cir. 2016) ..................................................................18

*Hughes v. IQ Data Int'l, Inc.*,
   2016 U.S. Dist. LEXIS 177693 (N.D. Cal. 2016) ..........................................8

*Huy Thanh Vo v. Nelson & Kennard*,
   931 F. Supp. 2d 1080 (E.D. Cal. 2013)........................................................23

*Johnson v. MBNA Am. Bank, N.A.*,
   357 F.3d 426 (4th Cir. 2004) .....................................................................14

*Langan v. United States Servs. Auto. Ass'n*,
   69 F. Supp. 3d 965 (N.D. Cal. 2014) ...........................................................9

*Lies v. Farrell Lines, Inc.*,
   641 F.2d 765 (9th Cir. 1981) .......................................................................2

*Marchisio  v. Carrington Mortg. Servs., LLC*,
   27 Fla.L.Weekly Fed.C 1777 (11th Cir. 2019) ......................................14, 15

*Mejia v. Marauder Corp.*,
   2007 U.S. Dist. LEXIS 21313 (N.D. Cal. 2007) ..........................................23

*Murphy v. Bronson, Cawley & Bergman, LLP*,
   2011 WL 2413447 (S.D. Cal. 2011) ............................................................23

*Reyes v. Experian Info. Sols.*,
   No. 17-56699, 2019 U.S. App. LEXIS 14694 (9th Cir. May 17, 2019).......10

*Robbins v. CitiMortgage, Inc.*,
   2017 U.S. Dist. LEXIS 209367 (N.D. Cal. 2017) ...................................8, 20

*Roche v. Bank of America*,
   2013 U.S. Dist. LEXIS 95646 (S.D. Cal. 2013) ..........................................22

*Safeco Ins. Co. of Ant. v. Burr*,

551 U.S. 551 47 (2007) .................................................................... 9

*Scott v. Harris*,
    550 U.S. 372 (2007) ................................................................... 11

*Shah v. Capital One Bank*,
    2013 U.S. Dist. LEXIS 197272 (C.D. Cal. Jan. 11, 2013) ............................ 9

*Soria v. U.S. Bank N.A.*,
    No. SACV 17-00603-CJC(KESx)
    2019 U.S. Dist. LEXIS 70068 (C.D. Cal. 2019) ...................................... 9, 14

*State Farm Fire & Cas. Co. v. Geary*,
    699 F. Supp. 756 (N.D. Cal. 1987) .................................................. 2

*Swontek v. Cont'l Cent. Credit Inc.*,
    2018 U.S. Dist. LEXIS 166735 (D.Ariz. Sep. 27, 2018) .............................. 1

*Thomasian v. Wells Fargo Bank, N.A.*,
    2014 U.S. Dist. LEXIS 44165 (D.Or. Mar. 25, 2014) ................................ 15

*Vandonzel v. Experian Info. Sols., Inc.*,
    2017 U.S. Dist. LEXIS 120117 (N.D. Cal. July 31, 2017) ........................... 12

*Vanover v. Carruthers*,
    2018 U.S. Dist. LEXIS 11877 (C.D. Cal 2018) ..................................... 22, 23

## STATUTES

15 U.S.C. §§ 1681, *et seq.* ·········································································· 1, 12

15 U.S.C. §§ 1681-1681x ············································································· 9

15 U.S.C. § 1681(a)(4) ················································································ 1

15 U.S.C. § 1681s-2 ················································································· 9, 10

15 U.S.C. § 1681s-2(b) ·············································································· 8, 18

15 U.S.C. § 1681s-2(b)(1) ··········································································· 8

15 U.S.C. § 1692e ················································································· 24, 25

15 U.S.C. § 1692e(2)(A) ············································································ 24, 25

15 U.S.C. § 1692e(8) ················································································ 24, 25

**PLAINTIFF VICTOR M. SANCHEZ III'S MOTION FOR SUMMARY JUDGMENT, OR
ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**

15 U.S.C. § 1692e(10) ················································· 24, 25

15 U.S.C. § 1692f ······················································ 24, 25

15 U.S.C. § 1692f(1) ··················································· 24, 25

Cal. Civ. Code § 1785.3(j) ················································· 20

Cal. Civ. Code § 1788, *et seq.* ············································· 1

Cal. Civ. Code § 1788.2(c) ················································ 23

Cal. Civ. Code § 1788.2(e) ················································ 22

Cal. Civ. Code § 1788.2(f) ················································· 22

Cal. Civ. Code § 1788.2(h) ················································ 23

Cal. Civ. Code § 1788.2(k) ················································ 21

Cal. Civ. Code § 1788.17 ·········································· 23-24, 25

Cal. Civ. Code § 1785.25(a) ··············································· 21

## RULES

Fed. R. Civ. P. 56(c) ····················································· 2

Fed. R. Civ. P. 56(g) ····················································· 2

## OTHER

136 Cong. Rec. H5325-02
    (daily ed. July 23, 1999) ············································ 1

H.R. Rep. No. 95-131 (1977) ············································· 24

10B Wright, Miller & Kane,
    *Federal Practice & Procedure Civil* (4th ed.) ························· 1

**PLAINTIFF VICTOR M. SANCHEZ III'S MOTION FOR SUMMARY JUDGMENT, OR
ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**

## I.    **INTRODUCTION**

"A poor credit history is the 'Scarlet Letter' of the 20th Century America." 136 Cong. Rec. H5325-02 (daily ed. July 23, 1999) (statement of Rep. Annunzio) cited in *Fed. Trade Comm'n v. Gill*, 265 F.3d 944, 947 (9th Cir. 2001). "[T]he [FCRA] sought to make 'consumer reporting agencies exercise their grave responsibilities [in assembling and evaluating consumers' credit, and disseminating information about consumers' credit] with fairness, impartiality, and a respect for the consumer's right to privacy.'"  *Id.*; and, 15 U.S.C. § 1681a(4); *see also Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 133 (9th Cir. 1995) ("The FCRA was the product of congressional concern over abuses in the credit reporting industry.").

Here, Plaintiff VICTOR M. SANCHEZ, III ("Plaintiff") was forced to bring this lawsuit against Defendant US BANK NATIONAL ASSOCIATION's ("US Bank") for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*. ("FCRA"); the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, *et seq*. ("RFDCPA"); and, California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.1, *et seq*. ("CCCRAA"). US Bank ignored its grave responsibilities instead choosing to allow a seriously derogatory debt incurred by Plaintiff's father, Victor Sanchez, Jr.'s ("Father"), to report to Plaintiff's credit report and also subjected Plaintiff to repeated collection efforts regarding Father's debt.  Plaintiff now brings this Motion for Summary Judgment, or Alternatively Partial Summary Judgment ("Motion") with regards to the issue of US Bank's liability while reserving the issue of damages for trial.[1]

---

[1] *See 10B Wright, Miller & Kane, Federal Practice & Procedure Civil § 2736 n.5 (4th ed.); see also, Swontek v. Cont'l Cent. Credit Inc.*, 2018 U.S. Dist. LEXIS 166735, at *6, fn. 3 (D.Ariz. Sep. 27, 2018) ("It appears uncontroversial to allow motions for summary judgment to be limited to the question of liability.")

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

## II.    LEGAL STANDARD

### A. SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case.  *Celotex Corp. v. Catrett,*, 477 U.S. 317, 322-23 (1986).

### B. PARTIAL SUMMARY JUDGMENT

"Federal Rule of Civil Procedure 56(g) authorizes courts to grant partial summary judgment to limit the issues to be tried in a case."  *Herrera v. First Nat'l Bank of Omaha, N.A.*, 2017 U.S. Dist. LEXIS 200103, at *4 (C.D. Cal. Dec. 4, 2017) citing to *State Farm Fire & Cas. Co. v. Geary*, 699 F. Supp. 756, 759 (N.D. Cal. 1987) and, *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n. 3 (9th Cir. 1981). As such, Plaintiff requests the alternative relief of Partial Summary Judgment in the event that this Court denies any aspect of Plaintiff's Motion.

## III.    FACTUAL BACKGROUND

Plaintiff contends that the following undisputed facts support Plaintiff's request to enter judgment in Plaintiff's favor as a matter of law.

///

///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

**PLAINTIFF VICTOR M. SANCHEZ III'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**

## A. THE OPENING OF THE US BANK ACCOUNT

On August 23, 2015, Father submitted an online application to receive an open line of credit from US Bank. [Separate Statement of Unconverted Facts and Conclusions of Law ("SSUFC"), No. 1]. The online application contained Father's email, telephone number, date of birth ("DOB"), home address, driver's license, and occupation. [SSUFC, Nos. 2-16]. However, the last four of the social match Plaintiff, but Father believes that he put his own social on the online application. [SSUFC, Nos. 17-19]. This online application was approved and Father was given a line of credit through US Bank, account ending in "8521" (the "Account"). [SSUFC, Nos. 20-21].

Soon after the account's inception, Father cashed checks into the account under his name, Victor Sanchez, Jr. [SSUFC, Nos. 23-24]. Checks were cashed from Father's business to himself. [SSUFC, Nos. 25-26]. Father used the account to deposit a check from the sale of his truck. [SSUFC, Nos. 39-42]. The billing statements were mailed to several of Father's addresses. [SSUFC, Nos. 12-13; 43-45]. Father also had one of the security questions on the account set to Father's mother's maiden name. [SSUFC, Nos. 46-48].

On December 17, 2015, after Father cashed a check at a branch location, the birthdate on the account was changed from Father's 1963 birthdate, to Plaintiff's 1983 birthdate. [SSUFC, Nos. 49-50]. US Bank does not have a written policy requiring a consumer to produce verification before the birthdate on the account is modified. [SSUFC, No. 51]. On March 21, 2017, Father stopped making payments on the account, which had an outstanding balance of $1,165.95. [SSUFC, No. 52].

## B. PLAINTIFF'S FIRST DISPUTE

At some point before September 2017, Plaintiff received a call from US Bank attempting to collect on a delinquent account from Plaintiff. [SSUFC, No.

**PLAINTIFF VICTOR M. SANCHEZ III'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

53]. However, Plaintiff has never had a US Bank account. [SSUFC No. 54]. Several times in the past Father's accounts have been mistaken as belonging to Plaintiff. [SSUFC No. 55] Suspecting this was the case, Plaintiff went into his local US Bank branch in Lake Forrest, California. [SSUFC No. 56].

While in the branch location, Plaintiff informed the management that he believed there was a mix up, and that the account did not belong to Plaintiff, but instead belonged to Father. [SSUFC No. 57]. While at the branch location, bank representatives told Plaintiff that they could not share information on the account with Plaintiff because the address on the account did not match and Plaintiff was verbally stating that the account was not his. [SSUFC No. 58]. Management stated that they would investigate further and give Plaintiff a call back, Plaintiff never heard from this branch location again. [SSUFC No. 59]. US Bank never investigated Plaintiff's direct dispute. [SSUFC No. 60].

### C. PLAINTIFF'S SEPTEMBER 7, 2017 DISPUTE TO TRANS UNION

On September 7, 2017, Plaintiff submitted a written, online dispute to Trans Union through Trans Union's online dispute service. [SSUFC No. 61]. Within this dispute, Plaintiff stated that, "This account is not mine. I believe it belongs to my Father Victor M Sanchez, Jr." [SSUFC No. 62]. Trans Union forwarded this dispute to US Bank. [SSUFC No. 63]. US Bank dispute analysts, Chris Kundert ("Kundert") verified as accurate US Bank's reporting of the Account as belonging to Plaintiff. [*Id.*] In the process of validating, Kundert deleted the generational code "III" from Plaintiff's name because, in his opinion, it was not relevant. [*Id.*]

### D. PLAINTIFF'S SEPTEMBER 15, 2017 DISPUTE TO EQUIFAX

On September 15, 2017, US Bank received a dispute from Equifax that the Account was being disputed by Plaintiff as being "not his". [SSUFC No. 64]. US Bank dispute analysts, Crystal Kriz ("Kriz") verified as accurate US Bank's

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

**PLAINTIFF VICTOR M. SANCHEZ III'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**

reporting of the Account to Equifax. [*Id*.]

### E. FATHER'S SEPTEMBER 27, 2017 DISPUTE TO US BANK

On September 27, 2017, US Bank called the "8221" telephone number from the initial application, and Father answered. [SSUFC Nos. 9; 65-66]. During this call, Father tells US Bank that "I have an account with US Bank and somehow you're getting my son's credit. He does not have an account with US Bank; I have an account with US Bank." [SSUFC No. 67]. Moreover, Father states that US Bank "had some bad information or something that messed up in your system [*sic*]." [*Id*.] To which, US Bank representative states, "Well, that certainly is possible. Unfortunately, over the phone when I get a mismatch . . . I can't go any further in this matter." [SSUFC No. 68]. After this call, US Bank did no further investigation into this direct dispute. [SSUFC No. 60].

### F. PLAINTIFF'S NOVEMBER 27, 2017 DIRECT DISPUTE TO US BANK

On November 27, 2017, Plaintiff called into US Bank, after US Bank had called and left a message on his phone. [SSUFC No. 69]. After US Bank verifies Plaintiff's social security number ("SSN") match their records, Plaintiff again informs US Bank that this account does not belong to him. [SSUFC No. 70]. The US Bank representative is adamant that since the SSN matches, the account must belong to Plaintiff. [SSUFC No. 71]. Then US Bank asks Plaintiff for his mother's maiden name; but it does not match, instead the maiden name on the Account is Plaintiff's grandmother, i.e. Father's mother's maiden name. [SSUFC Nos. 46-48; 72]. Despite this, the US Bank representative states that since Plaintiff's DOB and SSN are linked to the account, he will need to pay it. [SSUFC No. 73].

Within minutes of this call, Plaintiff's telephone number becomes the primary telephone number associated with the account because the conversation "confirmed the good phone number when Plaintiff called in." [SSUFC 74].

**PLAINTIFF VICTOR M. SANCHEZ III'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT DI
COSTA MESA, CA 92626

Subsequent to the dispute, US Bank did not investigate or ever provide Plaintiff with a follow up call on the validity of the dispute. [SSUFC Nos. 60 & 75].

## G. ACCOUNT CHARGE OFF

On November 30, 2017, the unpaid debt on the Account was charged off due to its delinquent status. [SSUFC, No. 76]. US Bank reported the debt to credit reporting agencies as belonging to Plaintiff. [SSUFC, No. 77].

## H. PLAINTIFF'S FEBRUARY 15, 2018 DISPUTE TO EQUIFAX

On February 15, 2018, Plaintiff submitted a written dispute to Equifax. [SSUFC, No. 78]. Included in this dispute was Plaintiff's driver's license and social security card. [*Id*.] Plaintiff also included a letter stating that the account was not his, but instead it belonged to his father; and Plaintiff explicitly states, "**** Lane, Huntington Beach, CA 92649" is not a former address of his. [*Id*.] On March 8, 2018, Kundert verified as accurate US Bank's reporting of Father's account to Equifax. [SSUFC No. 80]. In verifying as accurate, Kundert again deleted the generational code from Plaintiff's name because it was not relevant. [*Id*.] Despite US Bank's verification, Equifax unilaterally deleted the tradeline from Plaintiff's credit report. [SSUFC No. 81].

## I. PLAINTIFF'S FEBRUARY 15, 2018 DISPUTE TO EXPERIAN

On February 15, 2018, Plaintiff submitted a written dispute to Experian. [SSUFC, No. 78]. Included in this dispute was Plaintiff's driver's license and social security card. [*Id*.] Plaintiff also included a letter stating that the account was not his, but instead it belonged to his father; and Plaintiff explicitly states "**** Lane, Huntington Beach, CA 92649" is not a former address of his. [*Id*.] On March 8, 2018, Danella Thurman ("Thurman") verified the account as accurate US Bank's reporting of Father's account to Experian. [SSUFC No. 82]. In the process of

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

verifying, Thurman deleted the generation code "III" from Plaintiff's name because it did not match US Bank's records. [*Id.*]

### J. PLAINTIFF'S FEBRUARY 15, 2018 DISPUTE TO TRANS UNION

On February 15, 2018, Plaintiff submitted a written dispute to Trans Union. [SSUFC, No. 78]. Included in this dispute was Plaintiff's driver's license and social security card. [*Id.*] Plaintiff also included a letter stating that the account was not his, but instead it belonged to his father; and Plaintiff explicitly states "**** Lane, Huntington Beach, CA 92649" is not a former address of mine. [*Id.*] On March 9, 2018, Thurman verified as accurate US Bank's reporting of Father's account to Trans Union. [SSUFC No. 83]. Again, Thurman deleted the generation code "III" from Plaintiff's name for the same reason. [*Id.*]

### K. PLAINTIFF'S MARCH 10, 2018 DISPUTE TO MONARCH

On March 1, 2018, US Bank sent the Account to Monarch Recovery Management ("Monarch"), a third-party debt collector, to handle the collection of the Account on US Bank's behalf. [SSUFC No. 84]. On March 10, 2018, in an attempt to collect on the account, Monarch called Plaintiff's telephone. [SSUFC No. 85]. After Plaintiff tells Monarch that the account does not belong to him despite the DOB and SSN matching, Plaintiff confirms that fraud has occurred because the account is not his. [SSUFC No. 86]. In response, Monarch put the account in fraud status, and notified US Bank's Fraud Support electronically and via email that the consumer was reporting fraud on the account and that Monarch was closing out the account. [SSUFC Nos. 87-89]. Additionally, the Monarch representative told Plaintiff that US Bank would be sending a fraud packet for Plaintiff to fill out. [SSUFC No. 90]. US Bank never investigated this dispute and never sent Plaintiff a fraud dispute packet. [SSUFC Nos. 60; 91].

Feeling he had no other choice, Plaintiff initiated this action approximately

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

**PLAINTIFF VICTOR M. SANCHEZ III'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**

two weeks later. [ECF No. 1]. In continuing to report another individual's account and verifying said inaccurate information to the Credit Bureaus, US Bank failed to conduct a reasonable investigation, failed to review all relevant information, and failed to fix US Bank's own mistake. [SSUFC, Nos. 1-48; 53-75; 78-91]. Because of US Bank's failure to conduct a reasonable investigation and continuous inaccurate reporting and collection activity, Plaintiff has suffered damages, including pecuniary loss and emotional distress.

## IV.   ARGUMENT

Plaintiff seeks partial summary judgment against US Bank with regard to the (A) FCRA; (B) CCCRAA; and (C) RFDCPA each of which are discussed below.

### A.   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AGAINST US BANK PURSUANT TO THE FCRA.

To assert a prima facie FCRA case for violation of 15 U.S.C. § 1681s-2(b), the plaintiff must "prove (1) Defendant is a 'furnisher'; (2) Plaintiff notified the [Credit Reporting Agency] that Plaintiff disputed the reporting as inaccurate; (3) the [Credit Reporting Agency] notified the furnisher of the alleged inaccurate information of the dispute; (4) the reporting was in fact inaccurate; and, (5) Defendant failed to conduct the investigation required by [15 U.S.C.] § 1681s-2(b)(1).". *Robbins v. CitiMortgage, Inc.*, 2017 U.S. Dist. LEXIS 209367, at *13 (N.D. Cal. Dec. 20, 2017) citing to *Biggs v. Experian Info. Solutions, Inc.*, 209 F. Supp. 3d 1142, 1144 (N.D. Cal. 2016); *Hughes v. IQ Data Int'l, Inc.*, 2016 U.S. Dist. LEXIS 177693, at *2 (N.D. Cal. 2016); and, *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153-55 (9th Cir. 2009).  For the reasons below, Plaintiff's Motion should be granted as to the FCRA.

///

///

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

**PLAINTIFF VICTOR M. SANCHEZ III'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**

### 1. US Bank Is A "Furnisher" As Defined By 15 U.S.C. § 1681s-2

Pursuant to the FCRA, "[t]o ensure the accuracy of credit reports, the FCRA places several responsibilities on 'furnishers,' the sources that provide information to credit reporting agencies." *Soria v. U.S. Bank N.A.*, No. SACV 17-00603-CJC(KESx) 2019 U.S. Dist. LEXIS 70068, at *25 (C.D. Cal. 2019); 15 U.S.C. § 1681s-2. Here, Defendant admits that it is a furnisher of information as defined under 15 U.S.C. § 1681s-2. [SSUFC, No. 92]. Therefore, Plaintiff's Motion should be granted as to this element.

### 2. US Bank Reported The Mark To The Credit Bureaus

The FCRA requires that the furnisher actually report the information regarding the consumer to the credit bureaus. As previously mentioned, Congress enacted the FCRA, 15 U.S.C. §§ 1681-1681x, to, "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52, (2007); *Shah v. Capital One Bank*, 2013 U.S. Dist. LEXIS 197272, at *4 (C.D. Cal. Jan. 11, 2013).

US Bank also admits that it reported the alleged inaccuracy as belonging to Plaintiff to the credit bureaus. [SSUFC Nos., 77; 136]. Therefore, Plaintiff's Motion should be granted with regard to this element because there is no triable issue of fact as to US Bank's reporting requirement under the FCRA.

### 3. Plaintiff Disputed US Bank's Mark With The Three Major Credit Bureaus.

Under the FCRA furnishers have a duty imposed or "triggered" when a consumer disputes the information being reported. *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 978 (N.D. Cal. 2014) citing *Gorman* 584 F.3d at 1154. These additional duties are not imposed on furnishers until after there has been a dispute, as such, an actual dispute by the Plaintiff to the credit bureaus is required.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT DI
COSTA MESA, CA 92626

Here, US Bank admits that it investigated Plaintiff's disputes after receiving them from Trans Union, Experian, and Equifax. [SSUFC No. 93]. Thus, Plaintiff's Motion should be granted with regard to this element.

### 4.  US Bank Verified The Mark On Plaintiff's Consumer Report

After furnishers receive notice of a dispute, furnishers must investigate and verify the accuracy of the disputed information. *See* 15 U.S.C. § 1681s-2; *Ellis v. Pa. Higher Educ. Assistance Agency*, 2008 U.S. Dist. LEXIS 129710, at *8 (C.D. Cal. Aug. 12, 2008). Here, US Bank admits that it did not delete the Account in responding to the credit reporting agencies. [SSUFC Nos. 63-64; 80; 82-83]. As such, Plaintiff's Motion should be granted with regard to this element because there is no triable issue of fact as to whether the disputed information was verified.

### 5.  The Information As Reported On Plaintiff's Consumer Report Is Inaccurate.

Under the FCRA furnishers of information are required to report accurate information, failure to do so is a violation of the FCRA. *Corns v. Residential Credit Sols., Inc.*, 2016 U.S. Dist. LEXIS 27864, at *4 (D. Nev. Mar. 3, 2016) citing to 15 U.S.C. § 1681s-2. In order for a plaintiff to successfully assert a claim against a defendant under the FCRA the plaintiff must show that he or she found an inaccuracy in his or her credit report. *Id.*; *Biggs*, 209 F. Supp. 3d at 1144 (N.D. Cal. 2016). A credit entry may be deemed inaccurate within the meaning of the FCRA if the reporting is "patently incorrect" or if it is "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Id*. *See also Reyes v. Experian Info. Sols.*, No. 17-56699, 2019 U.S. App. LEXIS 14694, at *2 (9th Cir. May 17, 2019) citing to *Gorman*, 584 F.3d at 1163 (same).

First and foremost, the Parties agree that the individual that answered the "8221" telephone number listed on the initial application stated that he is Father,

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT DI
COSTA MESA, CA 92626

1   and that the account belongs to Father, not Plaintiff. [SSUFC Nos. 65-67].

2   Similarly, the individual that submitted the initial online application input a 1963

3   birthdate, which is Father's DOB. [SSUFC, Nos 4; 10]. The account was opened

4   with an Arizona driver's license, which Plaintiff has never had. [SSUFC Nos. 6;

5   14-15]. Moreover, the Parties agree that there are several checks deposited into the

6   account that explicitly state Father's name of "Victor Sanchez, Jr.", yet not a single

7   check says Plaintiff's name "Victor Sanchez, III". [SSUFC, No. 23-24; 38]. The

8   Account has several checks cashed from Father's business to Father. [SSUFC No.

9   26]. The checks that were cashed from Father and Plaintiff's joint employer were

10   non-payroll checks, but Plaintiff only received payroll checks. [*Id*., No. 34-37].

11   Additionally, Plaintiff testified that the signature on the checks were Father's

12   signature. [*Id*., No. 94]. Plaintiff had never made withdrawals on the account and

13   never accessed the line of credit. [*Id*., No. 95]. Plaintiff does not even recognize

14   some the addresses that account statements were mailed to. [*Id*., Nos. 96-97].

15   The Supreme Court has stated that, "when opposing parties tell two different

16   stories, one of which is blatantly contradicted by the record, so that no reasonable

17   jury could believe it, a court should not adopt that version of the facts for purposes

18   of ruling on a motion for summary judgment." *See Scott v. Harris*, 550 U.S. 372,

19   380 (2007). For US Bank to claim that Plaintiff either opened this account or used

20   it, would blatantly contradict the record.

21   Here, Plaintiff is arguing that it is patently incorrect or misleading for US

22   Bank to report this debt as belong to Plaintiff, when Plaintiff neither opened nor

23   used the Account. At the time the Account was opened, all the personal identifiers

24   except the social security number belonged to another individual. Plaintiff was not

25   even familiar with an address where statements were sent. No reasonable jury

26   could possibly find that this account was opened or used by Plaintiff because there

27

28

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

**PLAINTIFF VICTOR M. SANCHEZ III'S MOTION FOR SUMMARY JUDGMENT, OR
ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**

is nothing in the record to support that conclusion. Therefore, there is no triable issue that US Bank's reporting of this debt as belonging to Plaintiff was inaccurate.

### 6. US Bank's Investigation was Not Reasonable.

As previously discussed, furnishers have a duty to report accurate information. *See generally* 15 U.S.C. §§ 1681, *et seq.* Once furnishers are put on notice that a dispute has been made regarding the accuracy of a reporting, the furnisher is required to conduct an investigation. *Abbot v. Experian Info. Sols.*, 179 F. Supp. 3d 940, 945 (N.D. Cal. 2016).

US Bank's investigation is unreasonable because (a) US Bank did not tailor its investigation to the dispute; (b) US Bank's investigation relied solely on its own internal records; (c) US Bank did not review relevant documents that it was made aware of; (d) US Bank placed efficiency over accuracy by rewarding speedy results only; and, (e) untrained staff was investigating and submitting ACDVs.

### a. *US Bank's Investigation Disregarded Plaintiff's Dispute*

In interpreting the reasonableness of an investigation, the "pertinent question is . . . whether the furnisher's procedures were reasonable in light of what it learned about the dispute from the description in the CRA's notice of dispute." *Gorman,* 552 F.3d at 1017 (9th Cir. 2009). "[A]s long as a consumer provides reasonable notice of the nature of a dispute, a furnisher's investigation cannot be 'cabin[ed]' to the exact wording of the dispute notice." *Vandonzel v. Experian Info. Sols., Inc*., 2017 U.S. Dist. LEXIS 120117, at *12 (N.D. Cal. July 31, 2017).

In Plaintiff's February 15, 2018 disputes, Plaintiff stated that "**** Lane, Huntington Beach, CA 92649 is not a former address of mine" ("Huntington Address"). [SSUFC No. 78]. Moreover, both data analysts admit to receiving and reviewing this information. [SSUFC No. 79]. Thurman testified that after she reviewed this dispute letter, she confirmed the Huntington Address as being

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

**PLAINTIFF VICTOR M. SANCHEZ III'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**

Plaintiff's address because, "[w]ith the information he provided on the letter I didn't think it was different because he provided the information we had in our system with his social. He had the same social and his date of birth was the same, so the name and the address did not stand out." [SSUFC No. 98] Similarly, Kundert stated that he did nothing to verify whether the disputed address actually belonged to Plaintiff before verifying it as accurate. [SSUFC No. 99]. Therefore, despite Plaintiff explicating stating that he did not live at that address, both data analysts verified the information as accurate. Thus, both ignored Plaintiff's dispute.

Likewise, Kundert and Kriz stated that even if the disputed birthdate of a consumer did not match the initial application used to open the account, they would still verify the account. [SSUFC Nos. 100-101]. Plaintiff's clear statement that the account does not belong to him is insufficient to be a claim of fraud because, "I believe it just said [the Account] didn't belong to him. But it didn't say fraud or fraudulent." [SSUFC No. 150].

These dispute analysts' actions are inconsistent with US Bank's policies. According to US Bank's Rule 30(b)(6) deponent, when a consumer, similar to Plaintiff, is complaining of a file not belonging to him, "the account would be sent to the fraud investigator." [SSUFC No. 151]. US Bank provides Monarch with its definition of fraud, and Monarch states that a consumer saying "this isn't my account" is the definition of fraud. [SSUFC Nos. 102-103]. So, in light of Plaintiff's dispute, it is unreasonable to not flag the dispute as fraud so that it can be investigated in more detail by the fraud team.

Lastly, these dispute analysts repeatedly deleted the generation code "III" from Plaintiff's name in verifying the account. [SSUFC Nos. 63; 80; 82; 83]. Their reasoning was because it was not relevant or because the name on the account did not have a generation code. [*Id.*] However, this completely disregards Plaintiff's

**PLAINTIFF VICTOR M. SANCHEZ III'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

disputes which stated that "[t]his account is not mine. I believe it belongs to my Father Victor M Sanchez, Jr." [SSUFC No. 62].

Therefore, instead of basing the investigation off of the dispute, US Bank is merely mirroring its records onto the ACDV and sending it back to the credit reporting agencies. This kind of behavior makes US Bank's investigation unreasonable as a matter of law. *Marchisio v. Carrington Mortg. Servs., LLC,* 919 F.3d 1288 (11th Cir. 2019).

### b.   *US Bank Merely Regurgitates Its Internal Documents*

A furnisher's failure to examine documents beyond its internal documents is a sign that the investigation was unreasonable. *Gorman*, 584 F.3d at 1160-61; *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004). "[T]he question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." *Felts v. Wells Fargo Bank, N.A*., 893 F.3d 1305, 1312 (11th Cir. 2018). The Honorable Cormac J. Carney recently stated in another Motion for Summary Judgment regarding US Bank's credit reporting issues that "a reasonable investigation requires more than just a review of the internal records." *Soria*, 2019 U.S. Dist. LEXIS 70068, at *28.

Here, US Bank's data analysts do not access records outside of US Bank's internal records. [SSUFC No. 104]. Specific to Plaintiff's dispute, none of these dispute analysts looked to any records outside of US Bank's internal records to confirm any of US Bank's information, which the consumer was disputing. [SSUFC Nos. 105-107]. Even within US Bank's records, these dispute analysts do not have access to imaged checks in the disputed account or call recordings of previous US Bank contact with the consumer. [SSUFC Nos. 142-143]. If any dispute analyst tries to request any of these items, it would create a controversy and

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT DI
COSTA MESA, CA 92626

management would tell the data analyst, "[t]hat's not something you need to worry about." [SSUFC No. 144].

Because US Bank limits its employees' investigation to only certain internal documentation, "[t]he error can be laid at the feet of [US Bank], which had failed to create a reliable system." *Marchisio,* 919 F.3d at 1302. US Bank's flawed system is reflected in the dispute analysts' approach to conducting investigations.

As Kriz testified, even if the consumer's dispute did not match the substance of US Bank's account notes, "[w]e would just simply report back what is listed in [US Bank's account notes]." [SSUFC No. 145]. Kundert testified that "the basic function of the ACDV, is to simply validate that our information on our end matches the information provided by the bureaus." [SSUFC No. 146]. This is completely backwards. US Bank should be verifying that its own information is accurate, not that it matches what the credit reporting agencies are reporting (which is what US Bank sent to the credit reporting agency in the first place). When asked how Thurman approaches the problem of the dispute's address not matching what is in US Bank's records, Thurman states, "I would just put the address that we have on file." [SSUFC No. 147].

The FCRA was enacted to preclude furnisher's from, "rubber stamping their earlier submissions, even where circumstances demanded a more thorough inquiry." *Thomasian v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 44165, at *36 (D.Or. Mar. 25, 2014). US Bank set up a system where employees only option is to parrot US Bank's own internal records, which is a rubber stamp with no meaningful investigation into the disputed information. [SSUFC, No. 153]. As Kriz explained, the information being reported to the Credit Bureaus in this scenario comes from US Bank's Hogan system of records. [*Id.*]. When a consumer disputes such information, US Bank's Dispute Analysts simply "report back what

**PLAINTIFF VICTOR M. SANCHEZ III'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

is listed in Hogan." [*Id.*]. Kriz even testified that this is unreasonable. [*Id.*].

### c. *US Bank's Dispute Analysts Did Not Properly Review Relevant Documents*

Even if US Bank's sole reliance on its own internal records was reasonable, the data analysts here either hastily reviewed or completely ignored relevant US Bank records, which is unreasonable. *Gorman,* 584 F.3d at 1155-56. According to US Bank's policies, a reasonable investigation is one that "reviews ***all*** information received with the dispute, along with applicable systems and bank documentation for any information relevant to the dispute." [SSUFC No. 108] (emphasis added). For Plaintiff's dispute, the analysts should "review the account on a system of record, the customer profile . . . for this customer and the account in question and any notations on that account that may relate to the disputed items and any other documentation they may find relevant." [*Id.*, No. 109].

Dispute Analysts Thurman and Kundert testified that they looked at the account notes for the Account. [SSUFC Nos. 110-111]. Within these account notes there are two separate summaries of two separate telephone calls. One is a summary of a call with Father, where Father states that the account belongs to him, not Plaintiff. [SSUFC No. 112]. The second note (which takes up almost an entire page) details a call where Plaintiff states that the account does not belong to him, but instead belongs to Father. [SSUFC No. 113]. Notwithstanding this, neither of these dispute analysts asked for these recordings or asked any other individual to review these calls. [SSUFC Nos. 114-115]. In fact, Thurman testifies that even after she reviewed the account notes, she did not see anything that would lead her to investigate any phone calls generally. [SSUFC Nos. 152]. After listening to the recording of Father's conversation with US Bank, Kriz testified that she would hope that such a recording would absolve her of the debt if it was her dispute. [*Id.*,

**PLAINTIFF VICTOR M. SANCHEZ III'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

No. 154].  Kriz also explained that "[i]f this was [her] dispute, [Kriz] would be really mad and wouldn't be able to understand why this can't be fixed and be resolved and be done and over with." [*Id.*, No. 155].

Both of these dispute analysts briefly skimmed the Account Notes, without giving any time to actually review what had been noted. US Bank's review of these account notes was not a proper investigation under the FCRA. *Gorman,* 584 F.3d at 1155 ("[A]n 'investigation' requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review"). Even worse, Thurman and Kundert testified that if they had heard recordings of these calls, they would not have verified without first seeking review from supervisors or wouldn't have verified at all. [SSUFC Nos. 116-117].

Similarly, each dispute analyst has stated that the initial contract for an account is a relevant item in examining disputes such as Plaintiff's dispute. [SSUFC No. 118]. However, a great majority of lines of credit do not have a contract, but instead have something like an initial online application. [SSUFC No. 119]. Similar to the initial contract, the initial online application has the name, SSN, DOB and address of the person that opened the account. [SSUFC No. 120].

Despite the online application being the functional equivalent of the initial contract, these analysts did not review the initial online application. [SSUFC No. 121]. Dispute analyst Thurman believes that pulling the online application is "not part of our procedures." [SSUFC No. 156]. In fact, several dispute analysts testified that if they had seen the application they would have referred the dispute to the fraud department instead of verifying. [SSUFC No. 122].

Each of these dispute analysts saw information that should have led them to investigate other relevant documents. However, not a single dispute analyst followed the clues to uncover the facts behind them. Instead, each rubber stamped

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

**PLAINTIFF VICTOR M. SANCHEZ III'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**

personal identifiers associated with the Account back to the credit reporting agency. Because US Bank does, "not look beyond the information contained in the [internal data file] and never consult[ed] underlying documents such as account applications," US Bank violated § 1681s-2(b). *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016).

### d.   US Bank placed efficiency over accuracy by rewarding only speedy results.

While US Bank attempts to craft a consumer-first narrative, former Dispute Analyst Kriz made the true work environment abundantly clear. Kriz explained that speed was the focus of the investigation process as opposed to the results, causing an overly-stressful work environment. [SSUFC, Nos. 158-160]. At one point, US Bank even provided Target gift cards to those employees that handled the most disputes. [*Id.*, No. 157]. The number of disputes handled by each dispute analyst was publicly displaced for all dispute analysts to see with the "top producers" being recognized as "stars." [*Id.*, No. 158]. On the other hand, this public display resulted in embarrassment for those who reviewed fewer disputes. [*Id.*, No. 159]. The "bottom producers" even had their names written on the board in red. [*Id.*, No. 160].

Moreover, Kriz further described this stressful environment as follows: "just the constant more, more, more. And then the weeks that you would meet your numbers, they're like well, Crystal, you did forty disputes today, so I betcha tomorrow you can do forty-two. You know, it was like – never good enough." [*Id.*, No. 161]. In fact, Kriz quit as a result of this stress. [*Id.*, No. 162].

Even more troubling, Kriz agreed that simple communications to a consumer via e-mail or telephone could quickly resolve various discrepancies. [*Id.*, No. 163]. If Kriz was a consumer disputing an inaccuracy, Kriz would want the Dispute

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

**PLAINTIFF VICTOR M. SANCHEZ III'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**

Analyst to take these steps; however, such actions were not authorized by US Bank's policies since US Bank wanted to "push production." [*Id*., No. 164]. US Bank's emphasis on speed as opposed to accuracy is misplaced and unreasonable.

**e.** ***US Bank had Untrained Support Staff Investigating and Submitting ACDVs***

Every month, US Bank receives approximately 700 direct disputes, and between 2,500 to 3,000 indirect disputes. [SSUFC No. 123]. A dispute analyst could receive as many as one hundred disputes in a single day. [*Id*., No. 124]. A dispute analyst typically would complete 30-40 disputes a day. [*Id*., No. 125]. The typical dispute analyst would receive and complete a dispute in the same eight-hour work day. [SSUFC No. 126].

Due to this overwhelming influx of disputes, US Bank began directing Deborah Arellano ("Arellano") to submit ACDVs. [SSUFC No. 127]. Arellano has no training on how to investigate or complete an ACDV; does not know how to read an ACDV; and she is unfamiliar with the ACDV process. [*Id*., Nos. 128-130]. This is apparent from the fact that she did not believe that a reasonable investigation has anything to do with submitting an ACDV. [*Id*., No. 131]. When Ms. Arellano submitted each ACDV, she was declaring that she "certif[ied] that [she had] reviewed and considered all associated Images, . . . verified the accuracy of the data, . . . and [her] computer and/or manual records will be adjusted to reflect any changes noted." [*Id*., No. 132]. In actuality, when Arellano submitted the ACDV she had not reviewed a single document or piece of information regarding the dispute. [*Id*., No. 133].

Most important, this untrained individual was a part of the investigation into Plaintiff's dispute. [*Id*., No. 134]. In fact, Arellano was so entrenched in investigating these disputes that US Bank's person most knowledgeable believed

**PLAINTIFF VICTOR M. SANCHEZ III'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

1    that Arellano is a dispute analyst. [*Id*., No. 135]. This reliance on an untrained

2    representative to investigate and submit ACDVs in unreasonable.

3        Therefore, Plaintiff requests that this Court find that US Bank's investigation

4    is unreasonable as a matter of law.

### B. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AGAINST US BANK PURSUANT TO THE CCCRAA.

7        Like the relationship between the RFDCPA and the FDCPA, the CCCRAA

8    is virtually identical to the FCRA. *See Carvalho v. Equifax Info. Servs., LLC*, 629

9    F.3d 876, 890 (9th Cir. 2010). "Unlike the [FCRA], the [CCCRAA] does not

10   require that an agency notify the furnisher about disputed reports before a

11   consumer gains a private right of action." *Robbins*, 2017 U.S. Dist. LEXIS 209367,

12   at *38. To prevail on a CCCRAA claim, the plaintiff "must prove that (1)

13   Defendant is a 'person' under the CCCRAA, (2) Defendant reported information to

14   a [Credit Reporting Agency]; (3) the information reported was inaccurate; (4)

15   Plaintiff was harmed; and, (5) Defendant knew or should have known that the

16   information was inaccurate." *Id*. at *39. For the reasons below, this Court should

17   rule in favor of Plaintiff as a matter of law with regard to the CCCRAA.

### 1. US Bank Is A "Person" As Defined by Cal. Civ. Code § 1785.3(j)

20       Pursuant to Cal. Civ. Code § 1785.3(j), a person is any individual,

21   partnership, corporation, trust, estate, cooperative, association, government or

22   governmental subdivision or agency, or other entity. Here, US Bank admits that it

23   is a national banking organization with its principal place of business in Minnesota.

24   [ECF No. 18, 3:21-24]. As such, Plaintiff's Motion should be granted with regard

25   to this element because there is no triable issue of fact as it pertains to whether US

26   Bank is a "person" under the CCCRA.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

### 2. US Bank Reported Information Regarding Plaintiff To A "Consumer Credit Reporting Agency" As Defined By Cal. Civ. Code § 1788.2(k)

Under Cal. Civ. Code § 1788.2(k) the term "consumer reporting agency" means "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages, in whole or in part, in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer credit reports to third parties, and which uses any means or facility for the purpose of preparing or furnishing consumer credit reports." The Parties agree that US Bank published Plaintiff's personal identifiers to the three big credit bureaus Trans Union, Experian, and Equifax. [SSUFC No. 136]. Thus, Plaintiff's Motion should be granted with regard to this element because no triable issue of fact exists.

### 3. US Bank Knew Or Should Have Known The Information It Reported Was Inaccurate In Violation Of Cal. Civ. Code § 1785.25(a)

The CCCRAA, which almost mirrors the FCRA, states that "a person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." *See Cavalho*, 615 F.3d at 1227-28 citing to Cal. Civ. Code § 1785.25(a).

As previously discussed, not only was the information inaccurate, but US Bank was on notice that the information being reported about Plaintiff was being disputed. Specifically, Plaintiff made numerous written and verbal disputes directly and indirectly to US Bank, all contesting the accuracy of the information US Bank was reporting. [SSUFC, Nos. 53-75; 78-91]. Plaintiff also made an in-person visit to a branch location disputing the accuracy of the account. [SSUFC, No. 56]. Most importantly, Father himself notified US Bank that the account belonged to Father,

**PLAINTIFF VICTOR M. SANCHEZ III'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

not Plaintiff; and thereby directly confirming and supporting Plaintiff's explicit dispute. [SSUFC, No. 67]. However, US Bank did not investigate any of these direct disputes. [SSUFC No. 60]. Thus, US Bank should be found to have violated the CCCRAA for each reporting period in which US Bank inaccurately reported a delinquency regarding Plaintiff to the credit bureaus.

### C. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AGAINST US BANK PURSUANT TO THE RFDCPA

"[T]o establish that Defendant violated the RFDCPA, Plaintiff must show that under the RFDCPA: (1) Defendant was attempting to collect a 'consumer debt'; (2) Defendant is a 'debt collector'; (3) Plaintiff is a 'debtor'; and, (4) Defendant's collection activities violated the FDCPA and thus the RFDCPA." *Vanover v. Carruthers*, No. SACV17-196 DOC (DFMx), 2018 U.S. Dist. LEXIS 11877, at *12 (C.D. Cal. Jan. 24, 2018).

### 1. US Bank was attempting to collect a "consumer debt"

The RFDCPA defines the term "consumer debt" as "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." *See Vanover*, 2018 U.S. Dist. LEXIS 11877, at *12-13 citing to Cal. Civ. Code § 1788.2(f); and, *Roche v. Bank of America*, 2013 U.S. Dist. LEXIS 95646 (S.D. Cal. 2013). A "consumers credit transaction" is "a transaction between a natural person and another person in which property, services or money is acquired by credit by that natural person from such other person primarily for personal, family, or household purposes." Cal. Civ. Code § 1788.2(e).

Here, US Bank admits that it is a collector of consumer debts. [SSUFC No. 137]. The application on this line of credit is associated with an individual, and the expenditures on the account are for personal purposes. (*Id.*, Nos. 39-41; 138].

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT DI
COSTA MESA, CA 92626

1    Thus, Plaintiff's alleged debt was a "consumer debt" under the RFDCPA.

2          **2.**    <u>**US Bank is a "debt collector"**</u>

3          The RFDCPA defines "debt collector" as "any person who, in the ordinary

4    course of business, regularly, on behalf of himself or herself or others, engages in

5    debt collection." *See Vanover*, 2018 U.S. Dist. LEXIS 11877, at \*13 citing to Cal.

6    Civ. Code § 1788.2(c); *Mejia v. Marauder Corp.*, 2007 U.S. Dist. LEXIS 21313

7    (N.D. Cal. 2007). Since US Bank admits to being a "debt collector

8    as defined by the RFDCPA, Plaintiff's Motion should be granted on this element.

9    [SSUFC, No. 137].

10          **3.**    <u>**Plaintiff is a "debtor".**</u>

11          Pursuant to the RFDCPA, "debtor" means "a natural person from whom a

12    debt collector seeks to collect a consumer debt which is due and owing or alleged

13    to be due and owing from such person." *See Vanover*, 2018 U.S. Dist. LEXIS

14    11877, at \*14 citing to Cal. Civ. Code § 1788.2(h); *Huy Thanh Vo v. Nelson &*

15    *Kennard*, 931 F. Supp. 2d 1080, 1090 (E.D. Cal. 2013). First, Plaintiff is a natural

16    person. [SSUFC, No. 148]. US Bank placed several calls to Plaintiff in an attempt

17    to collect on the Account. [SSUFC, Nos. 53; 69; 85; 141; 165-67]. Thus, Plaintiff's

18    Motion should be granted with regard to this element.

19          **4.**    <u>**US Bank violated the RFDCPA by violating FDCPA**</u>

20       "[T]he FDCPA and RFDCPA are nearly identical since the RFDCPA is

21    California's version of the FDCPA and either mimics the relevant provisions of

22    the FDCPA or incorporates them by reference." *Cutler ex rel. Jay v. Sallie Mae,*

23    *Inc.*, 2014 U.S. Dist. LEXIS 181914, at \*4 (C.D. Cal. Sept. 9, 2014) citing to

24    *Murphy v. Bronson, Cawley & Bergmann, LLP*, No. 3:10-cv-01929 AJB (RBB),

25    2011 WL 2413447, at \*6 (S.D. Cal. June 13, 2011).

26          Therefore, Plaintiff is entitled to summary judgment under Cal. Civ. Code §

27

28

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

**PLAINTIFF VICTOR M. SANCHEZ III'S MOTION FOR SUMMARY JUDGMENT, OR
ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**

1788.17, through US Bank's violations of 15 U.S.C. §§ 1692e; 1692e(2)(A); 1692e(8); 1692e(10); 1692f; and, 1692f(1), as explained below.

   **a.   *US Bank Violated 15 U.S.C. §§ 1692e; 1692e(2)(A); and 1692e(8); 1692f; and, 1692f(1)***

15 U.S.C. § 1692e prohibits the "use of false, deceptive and misleading representations in connection with the collection of any debt." 15 U.S.C. § 1692e(2)(A) prohibits the "false representation of the character, amount or legal status of an alleged debt." Like 15 U.S.C. § 1692e, 15 U.S.C. § 1692e(10) prohibits the "use of any false representation or deceptive means to collect an alleged debt." 15 U.S.C. § 1692(f) prohibits the use of "unfair or unconscionable means to collect a debt." 15 U.S.C. § 1692(f)(1) prohibits the use of "collection of any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

As discussed at length above, the Account was not opened or used by Plaintiff, and thus it was not his debt. *See* § IV.A.5, *supra*. Despite this, US Bank itself and Monarch, acting on its behalf, called Plaintiff on several occasions in an attempt to collect the debt. [SSUFC Nos. 53; 69; 85; 141; 165-67]. The FDCPA was made to protect those "being hounded by a debt collector because of the debts of another person." *See* H.R. Rep. No. 95-131, at 8 (1977).

This is exactly what US Bank was doing here. For example, during a call between Plaintiff and US Bank on November 27, 2017, after Plaintiff explains that the account is not his, and that the mother's maiden name and address do not match his information, US Bank asks how Plaintiff intends to pay this debt and that debt collection activities will continue. [SSUFC Nos. 70-73]. Moreover, Plaintiff's "5894" telephone number became the primary number on the account because this same conversation "confirmed the good phone number when Mr.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Sanchez called in." [SSUFC No. 74]. Such collection activities are undoubtedly unlawful under the FDCPA. *See Gallegos v. LVNV Funding LLC,* 169 F. Supp. 3d 1235, 1242-1243 (D. Utah 2016) (found FDCPA violation when debt collector continued to call son after son informed collector that debt belonged to father).

US Bank's Rule 30(b)(6) witness Aaron Nagato confirms that this behavior is common. He testified that although US Bank will flag a telephone number as suspicious when an individual incorrectly answers security questions, US Bank will still call this number for collection purposes. [SSUFC No. 149].

On March 1, 2018, US Bank assigned the account (including Plaintiff's telephone number) to Monarch in attempt to collect the debt on US Bank's behalf. [*Id.*, No. 84]. On the morning of March 8, 2018, US Bank received Plaintiff's disputes from the credit reporting agencies. [*Id.*, No. 140]. Despite knowing the account was in dispute, US Bank never notified Monarch that Plaintiff was disputing the validity of the account. Consequently, Plaintiff received a collection call on March 8, 2018, before US Bank completed its investigation the next day. [*Id.*, Nos. 83; 167].

Thus, US Bank's continued collection efforts constitute a violation of 15 U.S.C. § 1692; 1692e(2)(A); 1692e(8); 1692f; and, 1692f(1) is a violation of Cal. Civ. Code § 1788.17, which is incorporated into the RFDCPA. Based upon this violation, Plaintiff requests this Court grant Plaintiff's Motion when US Bank violated the RFDCPA as a matter of law.

## VI.   **CONCLUSION**

For the reasons stated above, Plaintiff respectfully requests that Plaintiff's Motion for Summary Judgment be granted as to liability.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

**PLAINTIFF VICTOR M. SANCHEZ III'S MOTION FOR SUMMARY JUDGMENT, OR
ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**

Dated: May 23, 2019

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**


By: /s/ Matthew M. Loker
MATTHEW M. LOKER, ESQ.
ATTORNEY FOR PLAINTIFF


## CERTIFICATE OF SERVICE

A copy of the foregoing *Motion for Summary Judgment, or alternatively, Partial Summary Judgment* has been filed this 23rd day of May 2019, through the Court's electronic filing system.   All parties may access the foregoing via the Court's electronic filing system.


/s/ Matthew M. Loker
Matthew M. Loker

**PLAINTIFF VICTOR M. SANCHEZ III'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT DI
COSTA MESA, CA 92626